UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 06-465-C**

**STEPHEN NORMAN,**                                                                  **PLAINTIFF,**

**V.**                      **MEMORANDUM OPINION AND ORDER**

**HEALTHSOUTH REHABILITATION
CENTERS OF LOUISVILLE, ET AL.,**                          **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the summary judgment motion by defendant Healthsouth Rehabilitation Center of Louisville, Ltd. DE 19. The court having reviewed the record and being otherwise sufficiently advised, will grant the motion in part and deny it in part.

**A.**     **Background**

According to the complaint, DE 1-2, Stephen Norman applied for employment with defendant Old Dominion Freight Line, Inc. on July 31, 2006. He was offered a job as a "line-haul" driver, a job he had performed for over twenty years at FedEx Corporation. "Line-haul" routes consist of daily or nightly trips from the terminal to a designated point with one trailer and back to the terminal with another trailer with occasional side trips. The terminal manager at Old Dominion, Jim McClure, agreed Norman would start driving in two weeks so that Norman

1

could give his then-current employer, Midwest Trucking, two weeks' notice of his leaving. McClure also provided Norman information regarding drug screening, had him complete his pre-employment paperwork, and had him have his picture taken for his badge.

At the request of McClure, and more than two weeks later, Norman went to defendant HealthSouth Rehabilitation Center of Louisville, Ltd., where Angelique Clark-Miller, an occupational therapist, administered two tests to Norman and recorded his scores. Clark-Miller noted that Norman's feet were slipping during a "horizonal pull test." HealthSouth then communicated Norman's test results to Advanced Ergonomics, Inc. ("AEI"), which in turn presumably reported Norman's test results to Old Dominion. Norman complained about the test to McClure and he was called by Clark-Miller and invited to take the tests again the following day. DE 19, 2; DE 23, 2-4.

Norman went to HealthSouth for his second physical ability test on August 1, 2006, and Clark-Miller again administered the horizonal pull test and HealthSouth again communicated the scores to AEI, which again presumably reported the results to Old Dominion. During the test, according to Norman, Clark-Miller told him not to exert "maximum effort" out of concern he might damage the testing machine and he complied. Norman complained again to McClure about the administration of the test and McClure informed him the next day that Old Dominion's home office had revoked his offer of employment because he did not pass the test. Norman

protested and, at McClure's suggestion, attempted to address the situation with Old Dominion's human resources department. On August 16, 2006, Norman filed this suit against Old Dominion and HealthSouth, alleging that HealthSouth negligently administered the tests resulting in his losing the job offer at Old Dominion and that HealthSouth's report constituted slander or libel *per quod* and *per se*. The suit also alleges Old Dominion violated the Kentucky Civil Rights Act by failing to hire him due to a perceived disability. DE 19, 2-3, DE 23, 5-8. Norman did subsequently return to his old employer, Midwest Trucking, but claims he was given reduced working hours and reduced compensation relative to his situation before he left to take the job with Old Dominion at Midwest Trucking and at two other companies. Norman also claims he suffered a reduction in health and retirement benefits as a result of his attempt to work for Old Dominion. DE 23, 8-9.

All claims against defendant Old Dominion have been resolved through settlement. DE 31.

**B. Legal Standard**

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-moving party's case. *Id*. at 324-25. To survive summary judgment, the non-moving party must

come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**C.** **Analysis**

    **1.** **Negligence**

Defendant HealthSouth moves for summary judgment as to the negligence claim on the grounds that Norman has not come forward with any evidence that the conduct of HealthSouth's employees fell below the applicable standard of care. Specifically, HealthSouth asserts that Norman's failure to provide an expert witness to testify that Clark-Miller was negligent is fatal to his negligence claim.

Under Kentucky law, in order to maintain a negligence claim, a plaintiff must establish the following elements: "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). Moreover, in a medical malpractice case, the general rule embraced by the Kentucky Supreme Court is that "in most medical negligence cases, proof of causation requires the testimony of an expert witness because the

nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony." *Baylis v. Lourdes Hosp. Inc.*, 805 S.W.2d 122, 124 (Ky. 1991). There are two exceptions to this general rule, however: (1) "expert testimony is not necessary 'where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts'" and (2) "the doctrine of *res ipsa loquitur* may be applicable to medical negligence cases if the particular injury is a kind that a jury could reasonably find would not occur in the absence of injury." *Id.* n.3 (citing *Jarboe v. Harting*, 397 S.W.2d 775, 778 (1965); *Meiman v. Rehabilitation Center, Inc.*, 444 S.W.2d 78 (1969); *Maggard v. McKelvey*, 627 S.W.2d 44 (1981)).

     Norman first asserts he does not need an expert because the re-examination of his "horizontal pulling ability" conducted by Clark-Miller "is within his particular 'common knowledge or experience' to understand the application of force and weights; he has 'extensive enough' experience in this area, "'to recognize or infer negligence from the facts,' that he witnessed during [Clark-Miller's] administration of the horizontal pull test on August 1, 2006." DE 23, 14 (citing *Baylis*, 805 S.W.2d at 24 n.3 and *Jarboe v. Hartung*, 397 S.W.2d 775, 778 (1965)). While an expert is necessary under Kentucky law to assess "the specifics of the activity or the standard of care upon medical personnel, including phlebotomists, who draw blood," *Baptist Healthcare Systems v. Miller*, 177 S.W.3d 676, 680 (Ky. 2005), the court finds the present case to be distinguishable. Neither Clark-Miller nor the

phlebotomist in *Baptist Healthcare Systems* was licensed for the respective tests, but according to Norman's deposition, Clark-Miller told him the manual for the machine used in the horizonal pull test said he should pull "like you're pulling the pin on a semi." DE 23, 5. Also, Norman questioned Clark-Miller's instruction that he should not use his maximum strength on the test. DE 23, 5-6. Because the pulling motion tested by the "horizonal pull test" is familiar to lay persons, including jurors, as is pulling heavy objects that "simulate the demands of pulling a 5th wheel release pin" (the aim of the test according to its instructions), *see* DE 22-2, 2-3, jurors are in a position to recognize or infer negligence in the administration of the test, especially where the key consideration is as simple as whether Norman's maximum force was adequately measured. Therefore, Norman's negligence claim should not be dismissed as a matter of law for lack of an expert witness.

Because this exception to the expert-witness rule applies, it is unnecessary to consider whether the doctrine of *res ipsa loquitur* applies for purposes of this summary judgment motion. Mr. Norman's negligence claim may proceed.

### 2. Defamation

Defendant HealthSouth also moves for dismissal of Norman's defamation because "HealthSouth accurately communicated the test scores plaintiff earned on the physical ability tests [and] the communications were true." DE 25, 9.

Under Kentucky law, a defamation claim has four elements: "(1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury

6

to reputation." *Biber v. Duplicator Sales & Service, Inc.*, 155 S.W.3d 732, 736 (Ky. Ct. App. 2004). "[T]ruth is a complete defense" to a defamation claim. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 795-96 (Ky. 2004).

Norman claims that Clark-Miller's communication to AEI of Norman's scores amounted to the publication to another of defamatory matter. Clark-Miller published scores on the "horizontal pull test" of 120, 128, and 133, where the passing score was 152. HealthSouth contends the communication of the test scores was not defamatory, was covered by a qualified privilege, and was subject to the complete defense of truth.

Even assuming the communication from Clark-Miller to AEI was defamatory and not covered by a qualified privilege, *see Caslin v. General Elec. Co.*, 608 S.W.2d 69, 70-71 (Ky. Ct. App. 1980) (discussing when a qualified privilege applies), the court finds the test results communicated were accurate and correct readings by Clark-Miller and thus true. Therefore, the complete defense of truth applies. *See Stringer*, 151 S.W.3d at 796 (explaining, "if the evidence supports, without contradiction or room for reasonable difference of opinion, the defense that these [statements] were substantially true," the "complete defense" of truth would apply and preclude a finding of defamation as a matter of law). *Stringer*, 151 S.W.3d at 796. *See also Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc.*, 179 S.W.3d 785, 792 (Ky. 2005) (In defamation cases, "[t]ruth is a relatively easy concept to ascertain. It is generally defined as accuracy or correctness.").

Mr. Norman's defamation claim may not proceed.

D.  **Conclusion**

Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment, DE 19, is **DENIED IN PART** and **GRANTED IN PART**.


Signed on  January 16, 2008

*Jennifer B Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**